The STATE of Ohio, Appellee,

v.

ELLIOTT, Appellant.

[Cite as *State v. Elliott* (1995), 104 Ohio App.3d 812.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APA08–1274 and 94APA08–1275.

Decided June 22, 1995.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Michael L. Collyer,* Assistant Prosecuting Attorney, for appellee.

*Gerald G. Simmons,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Edward J. Elliott, appeals from judgments of the Franklin County Court of Common Pleas finding him guilty of one count of perjury, in violation of R.C. 2921.11, one count of felony child endangering, in violation R.C. 2919.22(A) and (E)(2), and one count of felonious assault, in violation of R.C. 2903.11(A).

In May 1988, Eddie Elliott, the six-year-old son of defendant and Barbara Elliott, was residing with his mother in the family home in Columbus, Ohio, his parents having separated earlier in the year. On the evening of May 16, 1988, Eddie accompanied his parents to a meeting with his school principal to discuss whether he should repeat kindergarten or advance to the first grade the following fall. After the meeting, all three returned to the house where Eddie and Barbara were living. Around 9:00 p.m., while defendant was still at the house, Barbara put Eddie to bed.

At approximately 6:30 a.m. the following morning, Eddie awoke and went to his mother's bedroom. Finding that his mother was not in bed, Eddie went to look for her. Entering the kitchen, Eddie discovered his mother's body lying on the floor in a pool of blood, her face covered in blood. Eddie then ran next door and told a neighbor that "[t]here's something wrong with my mommy. She's lying on the floor and she has something on her face. It might be blood. I think—I think she might be dead." The neighbor ran next door to the Elliott residence, found Barbara's body, and called the police.

In May 1989, defendant was tried for the aggravated murder of Barbara Elliott. The trial ended in a mistrial when the jury was unable to reach a unanimous verdict. Subsequently, the trial court granted defendant's Crim.R. 29(C) motion and acquitted him of the charge of aggravated murder. Following his acquittal, defendant retained custody of Eddie. In 1991, defendant and Eddie moved to Colorado, and in 1992, they moved to Missoula, Montana.

In December 1993, defendant appeared in the office of the prosecuting attorney for Missoula County, Montana and explained that he wished to confess to killing his wife. The authorities in Montana informed defendant that he did not have to talk to them, that he could have a lawyer if he desired one, and that he was free to leave if he wished. Defendant waived his rights and made a tape recorded statement in which he admitted that on the evening of May 16, 1988, he bludgeoned his wife to death in the kitchen of her home while Eddie was asleep upstairs. Given the confession, defendant was indicted in Franklin County, Ohio, on one count of perjury, one count of engaging in a pattern of corrupt activity, one count of felony child endangering, and one count of felonious assault. Defendant waived extradition and was returned to Ohio to stand trial.

Beginning on July 25, 1994, defendant's case was tried to the bench. At the close of the state's case, defendant moved for judgment of acquittal on each of the charges. The court granted defendant's motion on the charge of engaging in a pattern of corrupt activity, but overruled defendant's motions respecting the remaining charges. At the close of the case, the court found defendant guilty of one count of perjury, one count of felony child endangering, and one count of felonious assault, and it imposed sentence.

Defendant appeals, raising the following assignment of error:

"The trial court erred to the substantial prejudice of the appellant by its failure to grant appellant's Crim.Rule 29(A) motion of acquittal, and by its verdict of conviction of felonious assault and endangering children."

Defendant's single assignment of error challenges both the sufficiency and the manifest weight of the evidence supporting his convictions for felonious assault and child endangering.

In determining whether a criminal conviction is supported by sufficient evidence, we construe the evidence most favorably to the prosecution and then determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Conley* (Dec. 16, 1993), Franklin App. No. 93AP–387, unreported, 1993 WL 524917. When faced with a manifest weight of the evidence argument, we engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720; *Conley, supra.* A reviewing court will not reverse a conviction where the record contains substantial evidence on which the trier of fact could reasonably conclude that the disputed element of an offense has been proven beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59, 526 N.E.2d 304, 307.

A conviction for felony child endangering under R.C. 2919.22(A) requires proof that "defendant, as the parent, guardian, custodian, person having custody or control, or person *in loco parentis* of a child under eighteen years of age * * * recklessly created a substantial risk to the health or safety of the child by violating a duty of care, protection or support, and that the defendant's conduct resulted in serious physical harm to the child."[1] *State v. Barton* (1991), 71 Ohio App.3d 455, 462–463, 594 N.E.2d 702, 707–708. A conviction for felonious assault under R.C. 2903.11(A)(1) requires proof that "defendant knowingly caused serious physical harm to another." *Id.*

Defendant broadly attacks his conviction for felonious assault, arguing that a conviction for felonious assault under R.C. 2903.11(A)(1) requires proof of an affirmative act, an actual or attempted battery[2] of the victim; that, given the

---

1. "The culpable mental state of recklessness is an essential element of the crime of endangering children." *State v. Wright* (1986), 31 Ohio App.3d 232, 233, 31 OBR 515, 516, 510 N.E.2d 827, 828.

2. The term "battery" as defendant uses it refers to offensive physical touching or contact by another. See Black's Law Dictionary (6 Ed.Rev.1990) 152.

absence of any such evidence regarding Eddie, his conviction is not supported by sufficient evidence.

Undisputedly, the prosecution did not even attempt to prove that defendant committed the "classic" battery as to Eddie; to the contrary, the state consistently asserted that the felonious assault charge was grounded on defendant's failure to act to prevent Eddie from discovering his mother's body, which failure in turn resulted in serious physical harm to Eddie. As a result, we are asked to determine whether R.C. 2903.11(A) is drafted so broadly as to encompass a failure to act which results in serious physical harm.

Nothing in the language of R.C. 2903.11(A)(1) indicates a legislative intent to limit the scope of the statute to cases where the "serious physical harm" to the victim results from a battery. Indeed, the definition of "serious physical harm," which includes purely mental injury of such gravity as would normally require hospitalization or prolonged psychiatric treatment, suggests to the contrary. Specifically, if a physical touching were required, the definition of "serious physical harm" would not have to address potential mental harm, because a battery itself sufficient to cause such mental injury would in all likelihood itself be actionable under the section, or the statute defining felonious assault would exclude mental injury.

Moreover, the underlying premise of R.C. Title 29 includes criminal liability for an omission which results in a wrongful act, where a legal duty to act exists.[3] See Ohio Legislative Service Commission Commentary to R.C. 2901.21 (1973). Under Ohio law, parents and guardians have a legal duty to act to protect their children from harm. *State v. Sammons* (1979), 58 Ohio St.2d 460, 12 O.O.3d 384, 391 N.E.2d 713. Indeed, R.C. 2919.22(A) specifically incorporates that duty in defining child endangering. See *State v. Kamel* (1984), 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860. Thus, the crime of felony child endangering under R.C. 2919.22(A) may be committed by omission: where a child suffers serious physical harm as a result of a parent or guardian "recklessly" failing to protect the child from a substantial risk of harm, the parent or guardian is guilty of child endangering. *Id.* at 309, 12 OBR at 381, 466 N.E.2d at 863. As a result, where a child suffers serious physical harm as a result of his or her parent or guardian "knowingly," rather than "recklessly," failing to act in accordance with

---

3. R.C. 2901.21(A)(1) provides as follows:
    "[A] person is not guilty of an offense unless both of the following apply:
    "(1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;
    "(2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."

its legal duty to the child, the failure to act may constitute the crime of felonious assault.

Undisputedly, the facts of this case are unique; research reveals no other instance of prosecution for a mental injury caused by a defendant's failure to act. Indeed, defendant suggests that to interpret R.C. 2903.11(A)(1) so broadly as to encompass these facts would allow prosecution for mental injuries caused to bystanders of many common criminal acts.

Defendant's argument is not persuasive. Defendant's potential criminal liability in these circumstances arises not simply from the repercussions of his admitted murder of Eddie's mother, but from the legal duty he owed to Eddie as Eddie's father, coupled with his failure to act in accordance with that duty. Given the broad language of R.C. 2903.11(A)(1), the statute encompasses defendant's failure to act, given his legal duty to act.

■ · Defendant further challenges the sufficiency and weight of the evidence regarding various elements of the offenses charged. Defendant argues that the trial court's finding that Eddie suffered "serious physical harm" as a result of finding his mother's bloodied body is not supported by the weight of the evidence. R.C. 2901.01(E)(1) defines "serious physical harm" to include "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment."

In the present case, three psychologists and a psychiatrist testified for the state regarding Eddie Elliott's mental condition. Dr. Steven Beck and Dr. Nanette Hart, psychologists who treated and evaluated Eddie shortly after his mother's death, testified that at the time they saw Eddie he was suffering from Post–Traumatic Stress Disorder ("PTSD"), a mental illness which would require prolonged psychiatric treatment, as a direct result of having discovered the body of his murdered mother in the kitchen of their home. Dr. Herman Walters, a psychologist who evaluated Eddie for the Montana authorities following defendant's confession and arrest, testified that as a result of finding his mother's body, Eddie was suffering from a grave mental illness which would require psychological treatment for at least six months. Finally, Dr. Katherine O'Connor, the psychiatrist who has treated Eddie since his placement with his mother's relatives in Cincinnati, testified that Eddie continues to suffer from PTSD as a direct result of having discovered his mother's murdered body when he was six years old.

Defendant, however, asserts that the testimony of these four mental health professionals is outweighed by the testimony of Dr. Robert Segerstrom, the psychologist who treated Eddie while he and his father lived in Colorado. Dr. Segerstrom testified that he was unable to determine whether finding his

mother's body was the sole traumatic event which caused Eddie's mental condition, and that he was unsure whether Eddie's mental condition would require "prolonged" psychiatric treatment.

Although at first blush Dr. Segerstrom's testimony appears to contradict the testimony of the state's witnesses, it does not. Dr. Segerstrom testified only that Eddie's mental condition as of 1991 did not require "prolonged psychiatric treatment." Dr. Segerstrom expressly stated that he did not take issue with Dr. Beck's conclusion that Eddie had suffered PTSD as a result of discovering his mother's body in 1988, but that if Eddie had suffered from such a condition, it had been successfully treated by the time he saw Eddie. Dr. Segerstrom's testimony does not preclude reasonable minds from finding beyond a reasonable doubt that as a result of discovering his mother's body, Eddie suffered from a mental illness requiring prolonged psychiatric treatment. The trial court's conclusion that Eddie suffered "serious physical harm" is neither against the manifest weight of the evidence, nor unsupported by sufficient evidence.

■ Defendant next asserts, in the most difficult issue presented in this appeal, that the state failed to prove that defendant acted "knowingly" in causing Eddie to suffer serious physical harm.

The culpable mental state of "knowingly" is best understood through a comparison with the next lesser culpable mental state of "recklessly."[4] The distinction between the two rests in a person's perception of the likelihood of the result:

"A defendant acts knowingly when, although he may be indifferent to the result, he is nevertheless aware that the result may occur. A defendant acts recklessly * * * when he is aware that there is a risk or chance that the prescribed result may occur, but he nevertheless chooses to engage in the act and runs the risk. * * * *If the result is probable, the person acts 'knowingly'; if it is only possible, the person acts 'recklessly' * * *.*" State v. Edwards (1992), 83 Ohio App.3d 357, 361, 614 N.E.2d 1123, 1125.

Given the unique circumstances of this case, defendant's argument boils down to whether the evidence presented at trial would allow a rational trier of fact to

---

**4.** R.C. 2901.22(B) defines "knowingly" as follows:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

R.C. 2901.22(C) defines "recklessly" as follows:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

find beyond a reasonable doubt that defendant was aware (1) that Eddie probably would discover his mother's body, and (2) that he would probably suffer "serious physical harm" as a result of that discovery.

According to defendant's confession, on the evening of May 16, 1988, he and Barbara took Eddie to a meeting with the principal of Eddie's school to discuss whether Eddie should repeat kindergarten or enter first grade the following fall. After the meeting, the three returned to the house where Barbara and Eddie were living. Around 9:00 p.m., Barbara put Eddie to bed. Defendant and Barbara then went downstairs to the kitchen.

While Barbara was sitting at the kitchen table, defendant picked up an antique clothes iron which was sitting on the table and struck Barbara in the head with it. As a result of the blow, Barbara slumped over in the chair with her head on the table. Defendant asked Barbara if she was all right; when she did not respond, he attempted to lift her out of the chair in which she was sitting, but she slipped from his grasp and fell to the floor. Defendant again attempted to lift Barbara up, and again she fell to the floor. Throughout this period, Barbara was bleeding from her nose. Defendant then went upstairs to check on Eddie. Finding Eddie to be asleep, defendant went back down to the kitchen where he spent several minutes. Defendant then left the house, leaving Eddie, who was asleep in his upstairs bedroom, alone in the house with the body. Eddie discovered his mother's body when he awoke the following morning.

Despite those facts, defendant contends he was not aware that Eddie would probably find Barbara's body, as defendant did not realize that she was dead when he left the house. The evidence, however, would allow the trier of fact to conclude otherwise. The assistant coroner who examined Barbara Elliott's body at the scene of her death testified that by the time defendant left the house, Barbara's head would have been in a pool of blood, thus strongly suggesting that when defendant left the house he either knew that Barbara was dead, or knew that she would die shortly without medical attention. Coupled with the evidence that defendant left Eddie alone in the house overnight, that testimony provides sufficient evidence to permit reasonable minds to conclude that when defendant left the house without either removing Barbara's body or taking Eddie with him, he was aware that Eddie would probably discover his mother's body. Indeed, Eddie was virtually certain to discover his mother's body, as no one else could reasonably be expected to enter the kitchen before Eddie did.

■ The much more difficult question is whether the evidence was sufficient to permit the trier of fact to conclude that defendant was aware Eddie would probably suffer "serious physical harm" as a result of discovering his mother's body. Given that defendant's wrongful act was his failure to prevent Eddie from discovering Barbara's body, the only form of "serious physical harm" which

defendant could possibly have foreseen was that Eddie would suffer mental injury. Thus, to satisfy the "knowingly" requirement of R.C. 2903.11(A)(1), the evidence must establish that when defendant left the house he was aware that Eddie would probably suffer a "mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment" as a result of discovering his mother's body. Defendant's subjective state of mind may be determined from reasonable inferences arising from the evidence. *State v. Wright* (1986), 31 Ohio App.3d 232, 234, 31 OBR 515, 517, 510 N.E.2d 827, 829. However, the evidence that Eddie actually suffered "serious physical harm" is not evidence that defendant was aware that such harm was probable, rather than merely possible.

The state attempts to support the conviction by asserting that defendant knew at the time that he left Eddie alone in the house that Eddie was in a fragile mental state as the result of an existing mental illness or condition. The record does not support the state's claim. The only evidence regarding Eddie's mental health prior to his mother's death is defendant's statement that on the night of the killing, he and Barbara met with Eddie's principal to discuss whether Eddie should repeat kindergarten or advance to the first grade the following fall. While defendant's statement may provide some evidence that Eddie was not advanced in his learning, it is not evidence of a preexisting mental illness or condition which would have put defendant on notice that Eddie was susceptible to suffering serious mental injury as a result of discovering his mother's body.

Thus, construed in a light most favorable to the prosecution, the evidence portrays the following critical circumstances from which defendant's mental state could reasonably be inferred: defendant left Barbara Elliott lying in a pool of blood in the kitchen of her house, knowing that she was dead or dying; defendant left Eddie, a six-year-old boy, alone and asleep in the same house with the body overnight; defendant was aware that Eddie would probably be the one to discover his dead mother's body.

In response, defendant notes the testimony of Dr. Segerstrom, who stated that even a mental health professional would not be able to predict the severity of the mental injury which would result to a six-year-old child who discovered his mother's body under the circumstances of the present case.

Under these facts, application of the traditional notions of a defendant acting "knowingly" is problematic. While the concrete results of a physical battery often are observable and clearly predictable to even a lay person, the realm of mental injury falls more squarely within the expertise of a mental health professional. Nonetheless, the test for whether defendant acted knowingly is a subjective one, not an objective one subject to proof simply through expert testimony.

In the final analysis, we can envision few things more traumatic to a six-year-old child than to find his murdered mother's body in a pool of blood, unless it be to see the actual murder; if the circumstances of this case do not allow the inference that defendant knew serious physical harm in the form of mental injury to Eddie was the probable result of defendant's failure to act, we have difficulty imagining what circumstances would. While these facts do not mandate a conclusion that defendant acted knowingly, the evidence was sufficient to allow the trial judge to consider the issue. Thus, the trial court did not err in overruling defendant's Crim.R. 29 motion.

Further, in weighing the evidence, the trial court was not required to accept as credible Dr. Segerstrom's testimony concerning the ability to predict the severity of Eddie's mental injury. Indeed, the issue is not whether defendant knew Eddie would suffer a mental injury as defined by statute, but whether defendant was aware that Eddie probably would suffer such an injury. Given the egregious nature of the facts presented in this case, a rational trier of fact may reasonably conclude that defendant was aware that Eddie would probably sustain a mental injury rising to the level of serious physical harm if he discovered his mother's murdered body on waking the next morning.

█ Defendant also argues that the state failed to prove all the elements of felony child endangering beyond a reasonable doubt, contending that the evidence did not establish a "substantial risk" to Eddie's health or safety as a result of defendant's failure to prevent Eddie from discovering his mother's body. "Substantial risk" is defined in R.C. 2901.01(H) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

Under R.C. 2919.22(A), the state need only prove that defendant created a "substantial risk" to Eddie's "health or safety" by failing to prevent him from discovering his mother's body, and not that defendant created a "substantial risk" of "serious physical harm" to Eddie by his failure to act. The mental health professionals who testified all agreed that a young child would suffer some degree of emotional harm as a result of discovering the body of a murdered parent. Both the sufficiency and weight of the evidence support the conclusion that defendant created a strong possibility of harm to Eddie's "health or safety."

For the foregoing reasons, defendant's single assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and PETREE, J., concur.