Defendant Charles T. Harrington has appealed from a judgment of the Lorain County Common Pleas Court that found him guilty of domestic violence. This Court affirms.
 I.
On September 22, 1999, Defendant was indicted on one count of domestic violence. He waived his right to a jury trial, and the case proceeded to trial on February 1, 2000. The trial court found Defendant guilty, and sentenced him to a term of eight months in prison.[1] Defendant timely appealed, asserting two assignments of error. For ease of discussion, this Court will combine both arguments.
 II. Assignment of Error Number One
 The trial court erred in finding [Defendant] guilty of domestic violence when there was a lack of sufficient evidence to sustain such a conviction.
 Assignment of Error Number Two
 The trial court's verdict finding [Defendant] guilty of domestic violence is against the manifest weight of the evidence.
In his first and second assignment of error, Defendant has asserted that his conviction of domestic violence was not supported by the evidence presented at trial and that the verdict was against the manifest weight of the evidence. Specifically, Defendant has argued that the State failed to prove that he knowingly caused physical harm to the victim and that the trial court did not act as the fact-finder in the case at bar because it relied solely on the testimony of Officer Witt. This Court disagrees.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
As an initial matter, evaluations of the sufficiency of the evidence put forth by the State and the weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; see, also, State v. Thompkins (1997), 78 Ohio St.3d 380, 386
("`[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law").
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.Id. at 390 (Cook, J. concurring). In determining whether the State has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the State. Gulley, supra, at 3. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily in favor of the defendant. Id.
R.C. 2919.25(A) states that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly if "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). The result must be "probable," as opposed to possible, in order to find that the person has acted knowingly. State v. Elliott (1995),104 Ohio App.3d 812, 819, quoting State v. Edwards (1992),83 Ohio App.3d 357, 361. A defendant's mental state may properly be inferred from the surrounding circumstances. State v. Logan (1979),60 Ohio St.2d 126, 131.
 A. State's Witnesses
At trial, Officer William Witt testified that he responded to a 911 hang-up call at Defendant's house on July 19, 1999. He initially questioned Defendant and his ex-wife, Marcia, about the call. Defendant told Officer Witt that there was no problem and that his younger son Daniel must have accidentally dialed 911 instead of 411. Marcia agreed with Defendant's comment. While Officer Witt was talking to Defendant and Marcia, their son Jeffrey started yelling from across the street.
Upon further inquiry, Officer Witt discovered that Jeffrey had several marks across his body. Officer Witt again asked Defendant if anything had happened. Defendant stated that there was a problem with Jeffrey, he asked Jeffrey to leave, and escorted him out of the house. Next, Officer Wit spoke with Marcia, who informed him of the fight between Defendant and Jeffrey. According to Marcia, Defendant punched Jeffrey and then the two began fighting. Daniel attempted to break up the fight by striking Jeffrey with an aluminum handle from a broom.
Officer Wit then questioned Jeffrey, Daniel, and Joe Synder, a friend of the family. Daniel admitted to Officer Witt that he struck Jeffrey with the broom. Officer Witt testified that Joe and Daniel did not witness who started the fight. At the end of his investigation, Officer Wit placed Defendant and Daniel under arrest.
Next, Jeffrey testified that Defendant was intoxicated on the night in question. He stated that Defendant would become violent when he consumed alcohol. Jeffrey testified that he became involved in the incident because he was defending his mother, Marcia. Jeffrey added that he had done the same thing in the past when Defendant would push her.
Jeffrey testified that he was outside on the patio with Daniel and Joe when Defendant and Marcia began arguing. Jeffrey thought that Defendant hit Marcia because he saw Defendant throw his hands in the air and Marcia grab her face. He entered the house and told Defendant that he was not going to let him hit Marcia. According to Jeffrey, Defendant stated "you want some of me, you can have some of me" before punching him in the face. Jeffrey stated that he pushed Marcia out of the way because she was standing in the middle, and retaliated back at Defendant. He admitted that he probably hit Defendant thirty times. At one point, Jeffrey remembered that Daniel hit his back with a broom handle. Jeffrey pushed Daniel away and "finished what [he] was doing to" Defendant. Lastly, Jeffrey testified that Marcia was the only person present when the fight commenced.
Next, Marcia testified that the argument started because she was trying to stop Defendant from driving while intoxicated. She admitted that Defendant did not hit her. Marcia remembered that Jeffrey had warned Defendant not to hit her. She recalled that Defendant shouted, "I'll show you what a man can do" before punching Jeffrey. Marcia further testified that she was standing between Jeffrey and Defendant when Defendant reached over her shoulder and struck Jeffrey. She recalled that Jeffrey and Defendant were standing when they started fighting, but then fell to the floor and continued fighting. She stated that she was the only witness in the room because Joe and Daniel were outside on the patio when the fight started. While Jeffrey and Defendant were fighting, Marcia dialed 911. Marcia admitted that she wasn't really sure how many times Jeffrey hit Defendant. She estimated that Jeffrey hit Defendant four or five times. Finally, she stated that the fight ended when Daniel hit Jeffrey with the broom handle.
 B. Defendant's Motion for Acquittal
At the close of the State's case, Defendant's attorney moved the trial court for an acquittal, asserting that Marcia and Jeffrey's testimony was not credible because of the wide variations of the underlying event. The State responded by arguing that Officer Witt's testimony and photographs indicated that Jeffrey was injured. The State further added that the testimony of Marcia and Jeffrey was consistent in establishing that Defendant initiated the confrontation. Based on the foregoing, the trial court denied the motion.
 C. Defendant's Witnesses
Joe Synder testified that he was inside the house when Jeffrey started hitting Defendant. He admitted that he did not watch the entire fight because Defendant asked him to leave the house. Joe estimated that Jeffrey hit Defendant three or four times before Joe left the house. He stated that Jeffrey and Defendant were still standing when he was in the house. Joe admitted that he talked to the police, but did not remember what he told them.
Next, Daniel testified that Defendant was not intoxicated. He also stated that he was in the room when the fight began and saw Jeffrey hit Defendant. He admitted that he hit Jeffrey with a broom in an attempt to stop the fight; however, Jeffrey continued to hit Defendant. Lastly, Daniel stated that Officer Wit did not ask him if he witnessed the fight and only questioned him regarding the mark on Jeffrey's back.
Finally, Defendant testified, admitting that he had a couple of drinks the night of the incident. He testified that Jeffrey hit him first, and then he had to defend himself. Defendant stated that Joe and Daniel witnessed the fight. He also acknowledged that he had lied to the police because he wanted to protect Jeffrey.
After thoroughly reviewing the record, this Court concludes that a rational trier of fact could have found the required mental state to be present from the testimony presented. Furthermore, a review of the entire transcript indicates that the trial court did not release its role as the fact-finder and rely solely on the testimony of Officer Witt. Indeed, the trial court questioned the credibility of the witnesses concerning whether or not they were in or out of the house during the fight. Regardless of the location of Joe and Daniel, a rational trier of fact could have determined that Defendant knowingly caused physical harm to Jeffrey. Additionally, Defendant admitted that he had consumed alcohol on the night in question. Jeffrey and Marcia also testified that Defendant was intoxicated. They both testified that the fight commenced when Defendant reached over Marcia's shoulder and struck Jeffrey. Lastly, Officer Witt testified that he interviewed both Joe and Daniel and that they did not know who started the fight. The photographs taken by Officer Witt further indicate that Jeffrey was injured. In light of the foregoing, this Court concludes that this is not an exceptional case in which the weight of the evidence warrants a new trial. Defendant's assertion that the State failed to present sufficient evidence to support his conviction, therefore, is also without merit. State v. Roberts
(Sept. 17, 1997), Lorain App. No. 96CA006462, unreported at 4. Accordingly, Defendant's first and second assignments of error are overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P. J., BAIRD, J., CONCUR.
[1] Defendant had a prior conviction for domestic violence; therefore, his second violation was a felony of the fifth degree. See R.C.2919.25(D).