OPINION
{¶ 1} Defendant-appellant Charles E. Wilson appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of possession of cocaine and one count of aggravated possession of drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 15, 2002, at approximately 3:00 A.M., Officers Nixon and Redleski of the Canton City Police Department were in route to a "trouble call" in Canton, Ohio. As they were driving, they observed appellant walking in the street. Appellant was naked. They turned their cruiser around to observe appellant more closely. They noted that appellant had lacerations and streaks of blood on his body. Officer Nixon observed appellant with a cream colored object in his right hand which he saw appellant throw into a yard behind a tree. Officer Redleski, who was driving the cruiser, did not see appellant throw anything. At some point, a video camera in the cruiser was activated by one of the officers.
 {¶ 3} Appellant walked over to the officers. Appellant was naked, dazed and "zombie-like". The officers placed appellant in the back of the cruiser uncuffed. Officer Nixon then climbed over a fence and retrieved the object that he had seen appellant throw. The item retrieved was a pair of shorts (pants) with blood and flakes of a leafy green substance on them. The shorts had seven pockets. Officer Nixon went through each of the pockets and found a bag containing 29.60 grams of crack cocaine, a vile containing 1.24 grams of PCP and some marijuana. No identification or driver's license was found in the shorts. The officers observed that no one else was on the street.
 {¶ 4} The officers then continued on to the trouble call. An ambulance was called for appellant when he appeared unresponsive.
 {¶ 5} Subsequently, on September 11, 2002, appellant was indicted on one count of burglary, in violation of R.C.2911.12(A)(1), one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(e), and one count of aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(a). At an arraignment held on September 13, 2002, appellant pled not guilty. On September 18, 2002, appellant filed a request for discovery. After a change of counsel, a new request for discovery was filed on September 26, 2002.
 {¶ 6} On October 7, 2002, appellant filed a motion for a transcript of the preliminary hearing. The trial court granted the motion that same day.
 {¶ 7} On October 31, 2002, a motion was made to change appellant's plea to not guilty by reason of insanity. A hearing was held and a sanity evaluation was ordered. In support of his motion, appellant attached a copy of the preliminary hearing transcripts.
 {¶ 8} The transcript of the preliminary hearing revealed that the police officers had videotaped portions of the arrest of appellant. The response from the State to appellant's discovery request did not reveal the presence of a videotape. The record shows that there was no motion made to preserve the videotape by appellant but rather, appellant sent an informal letter to the State on November 4, 2002, requesting that the State supplement discovery with the videotape. Transcript of Proceedings, Vol. 1, pg. 114.
 {¶ 9} The matter proceeded to a jury trial beginning January 13, 2003. On the day of the trial, the State indicated that the videotape was not available because it was either "recycled or it was used in another case . . ." Transcript of Proceedings, Vol. 1, pg. 111. In response to the State's claim, appellant's counsel requested an opportunity to voir dire the officers involved to determine what happened to the videotape.
 {¶ 10} Thus, after opening statements of the parties and outside the presence of the jury, a voir dire of Officers Nixon and Redleski was conducted. Officer Nixon testified that the video equipment in the cruiser was activated just prior to appellant's arrest. Officer Nixon testified that the videotape revealed appellant walking naked towards the cruiser but it did not reveal appellant throwing any objects. Officer Nixon testified that because it did not reveal appellant throwing any objects, he took no special precautions to preserve the tape for evidence. Officer Nixon claimed that when he was informed that the videotape would be needed, he went to a supervisor and attempted to locate it. He testified that he was unsuccessful in locating it. Transcript of Proceedings, Vol. I, page 137. Thus, neither the State nor appellant had viewed the videotape.
 {¶ 11} After the voir dire of the officers, the trial court recessed to allow the State to make another attempt to locate the videotape. When the trial resumed, the State reported that it had obtained the log sheets for the cruiser and learned that the videotape was removed from the vehicle on August 16, 2002, and placed back in the cruiser on December 20, 2002, after being erased. Transcript of Proceedings, Vol. I, pg. 171. The trial court recessed until the next morning to allow the parties to submit legal arguments before making a decision on the relevance of the missing videotape and what affect, if any, it would have on appellant's trial.
 {¶ 12} The next day, on January 14, 2003, appellant filed a Motion to Suppress and Dismiss for the State's destruction of the videotape. During the arguments of counsel, it was revealed that appellant knew of the existence of a videotape on August 23, 2002. Transcript of Proceedings, Vol. II, pg. 188.
 {¶ 13} Ultimately, the trial court overruled appellant's motion to dismiss, finding that appellant had not demonstrated that the videotape contained "materially exculpatory" evidence. Further, that the trial court held that there was no bad faith on the part of the State.
 {¶ 14} The jurors then returned to the court room and the trial proceeded. The State called witnesses, including Officers Nixon and Redleski. Appellant called no witnesses and introduced no exhibits.
 {¶ 15} The jury was instructed on the elements of the crimes of possession of cocaine and aggravated possession of drugs. However, the State dismissed the burglary charge. Transcript of Proceedings, Vol. I, pg. 9. After receiving the instructions from the trial court, the jury found appellant guilty of the charges of possession of cocaine and aggravated possession of drugs.
 {¶ 16} The trial court proceeded to sentencing immediately. Noting that appellant had a prior criminal record consisting of four felony convictions, the trial court sentenced appellant to seven years of imprisonment on the count of possession of cocaine and six moths of imprisonment on the count of aggravated possession of drugs, to be served concurrently.
 {¶ 17} Thus, it is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 18} "I. The appellant's [sic] was deprived of a fair trial pursuant to the constitution by virtue of the state's destruction of evidence following a motion to preserve.
 {¶ 19} "II. The appellant's conviction was against the manifest weight of the evidence."
 I {¶ 20} In the first assignment of error, appellant contends that the State deprived appellant of a fair trial when it destroyed evidence, namely a cruiser videotape that filmed some of the events on the night of appellant's arrest. We disagree.
 {¶ 21} In Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. The United States Supreme Court stated the following:
 {¶ 22} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Maryland v. Brady (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant . . . We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58.
 {¶ 23} Thus, the Youngblood Court established two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. However, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. State v. Johnson (1988), 39 Ohio St.3d 48,529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' [citations omitted]" State v. Colby, Portage App. No. 2001 CR 0096, 2004-Ohio-343. This court has consistently held that the burden of proof is on the defendant to show the exculpatory nature of the destroyed evidence. See State v.Birkhold, (April 22, 2002), Licking App. No. 01CA104, 2002 WL 727154; State v. Hill (March 8, 1999), Stark App. No. 1998CA00083, 1999 WL 174921; State v. Blackshear (June 19, 1989), Stark App. No. CA-7638, 1989 WL 66650.
 {¶ 24} If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370.
 {¶ 25} In this case, the trial court found that the videotape was not shown to be materially exculpatory. Rather, the trial court found that the videotape was potentially useful to the defense. We agree.
 {¶ 26} During the voir dire, the two police officers involved in the incident testified concerning the circumstances of the arrest and the videotape. Officer Redleski testified that he could not recall whether there was a camera in the cruiser the officers drove that night nor could he recall actually activating the camera that night. The most that Officer Redleski could testify to is that if there were a camera, he would generally be the officer to activate the camera and that generally it would have been running at the time the officers came upon appellant. In addition, Officer Redleski testified that he did not see appellant throw anything from his person.
 {¶ 27} Officer Nixon testified that there was a camera in the cruiser they drove that night and that the camera was activated after he saw appellant throw the shorts. Officer Nixon further testified that he reviewed the videotape and that the videotape did not reveal appellant throwing any objects.
 {¶ 28} Based upon a review of the record, we conclude that the evidence was not shown to be materially exculpatory but merely potentially helpful to the defense. Accordingly, this court must determine whether there was a showing of bad faith.
 {¶ 29} Upon review, we find that there was no showing of bad faith. Officer Nixon testified that he turned the camera on that night but did so only after he saw appellant throw something. He further testified that he reviewed the tape and saw that the videotape revealed nothing. Officer Redleski could not be specific as to when the videotape was running. Further, Officer Redleski, who was driving the cruiser that night, testified that he did not see appellant throw anything. Thus, only Officer Nixon saw appellant throw something and Officer Nixon acknowledged that the videotape did not show appellant throwing anything. Thus, Officer Nixon did not claim that the videotape supported his testimony. Likewise, Officer Redleski's testimony did not support Officer Nixon's testimony. Upon review, we see no showing of bad faith, although Officer Nixon's failure to preserve the videotape could be considered poor judgment. However, that is not enough to establish a showing of bad faith.
 {¶ 30} Since appellant did not make a showing of bad faith, appellant's assignment of error must fail. Accordingly, appellant's first assignment of error is overruled.
 II {¶ 31} In the second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Specifically, appellant contends that because he was in a "zombie" like state, he could not have knowingly possessed the drugs. Further, appellant contends that the contradictory testimony, as to whether appellant threw the shorts that contained the cocaine and PCP, could not establish that appellant possessed the shorts or the drugs. Therefore, the jury was left with only the evidence that appellant was in the proximity of the drugs. Appellant argues that his mere proximity to the drugs was insufficient to support a finding that he was in possession of the drugs.
 {¶ 32} Our standard of review for manifest weight in criminal matters is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717; See also State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 33} Appellant was convicted of possession of cocaine and aggravated possession of PCP. In order to be convicted, the jury had to find that appellant knowingly possessed the illegal drugs. The culpable mental state of "knowingly" is defined as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 34} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v. Huff (2001), 145 Ohio App.3d 555, 563,763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v. McDaniel (May 1, 1998),Montgomery App. No. 16221, (citing State v. Elliott (1995),104 Ohio App.3d 812, 663 N.E.2d 412).
 {¶ 35} Although Officer Redleski testified that he did not see appellant throw anything, Officer Nixon testified that he saw appellant throw something cream colored into a yard behind a tree. Officer Nixon retrieved a cream colored pair of shorts which contained crack cocaine and PCP. Appellant was naked at the time. Appellant had multiple lacerations and was bleeding. The cream colored pants had what appeared to be blood on them.
 {¶ 36} Obviously, the jury believed Officer Nixon's testimony that he saw appellant throw something cream colored. From that evidence it was reasonable for the jury to infer that the pair of cream colored shorts found by Officer Nixon was the cream colored object he saw appellant throw. Likewise, since appellant was naked and bleeding, it was reasonable for the jury to conclude that the shorts with blood on them belonged to appellant. Those shorts contained cocaine and PCP. Although the record does not reflect that appellant was zombie like due to ingesting drugs or alcohol, it was reasonable for a jury to conclude that at some point, appellant placed those drugs in his shorts. See State v.Baker, Franklin App. No. 02AP-627, 2003-Ohio-633. Upon review, we find that the jury did not lose its way when it weighed the evidence, determined the credibility of the witnesses and determined any conflicts in the evidence. Accordingly, appellant's second assignment of error is overruled.
 {¶ 37} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Farmer, P.J. and Wise, J. concur