OPINION
{¶ 1} Defendant-appellant, Matthew G. Clements, appeals his convictions and sentences in the Licking County Court of Common Pleas on one count of felonious assault, with a firearm specification, a felony of the second degree in violation of R.C. 2903.11 and 2941.145, and one count of aggravated burglary, a felony of the first degree with a firearm specification in violation of R.C. 2911.11 and 2941.145. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} Steven Mclnyre testified that he had been shot in the leg on May 30, 2006 by a person whom he owed money for drugs (T. at 70; 73-74). McIntyre testified that he knew appellant from around the neighborhood, and that the two had had an argument over money earlier in May 2006. (T. at 75-76). The victim testified that he saw the person who had shot him (T. at 70). He further testified that he had been alone in the apartment until his assailant had arrived and shot him. (T. at 78). McIntyre testified that nobody else had been in the apartment with him before the shooting. (T. at 74). The victim further testified upon direct and cross examination that he believed he had told the responding officers that "street name" of the person who had shot him was "Face". (T. at 119; 121). He also testified that he told a detective at the hospital the identity of the person who had shot him (T. at 95). *Page 3 
 {¶ 3} Newark Police Officer Christian Maring testified that shortly after the shooting the victim had identified the person who shot him as "Face". (T. at 125-126).
 {¶ 4} Sergeant David Haren testified that the victim said the "street name" of the person who shot him was "Face". (T. at 183). He further testified that the victim had told him that he owed "Face" money and that "Face" had come over to collect the money, and when he didn't have it, "Face" struck him in the head and then shot him in the leg. (T. at 183).
 {¶ 5} Detective John Brnjic testified that victim had identified the "street name" of the person who shot him as "Face". (T. at 152). Detective Brnjic further testified that he had contacted the Columbus Police Department and using their suspect database had located a person with the street name of "Face". Detective Brnjic obtained a photograph of this suspect and placed it in a photo array. Detective Brnjic testified that the victim identified the appellant's photograph as the person who had shot him. (Tr. 152-154). The victim was shown the same photo array during the trial and acknowledged that one of the individuals in the photo array had shot him, but refused to point out the specific picture of the person in the array that had shot him (T. at 103-104).
 {¶ 6} Detective Brnjic testified that when he went to speak with the appellant about the shooting, the appellant fled from law enforcement and was subsequently apprehended after a foot chase (T. at 156). He further testified that when he interviewed the appellant about the shooting, the appellant acknowledged knowing the victim but denied being present during the shooting. (T. at 157). Detective Brnjic testified that at a later interview the appellant changed his story and admitted to being present when the victim was shot. He also testified that the appellant admitted he had gone to the victim's *Page 4 
apartment to collect a drug debt and that argument broke out when the victim failed to have the money. (T. at 161). Detective Brnjic further testified that the appellant said the argument became physical and that he had struck the victim in the head. (T. at 161). Appellant also informed him that another individual was at the apartment that night, smoking crack, and that it was that individual who shot McIntyre, then fled. (T. at 162). Michael Sanborn, the victim's roommate, testified that he was personally familiar with the appellant and he knew him by his "street name". He testified that appellant's "street name" was "Face". (T. at 196).
 {¶ 7} During the trial the victim refused to identify appellant as the person who had shot him. He further testified that he had concerns about the safety of his family and that he had either been paid and/or threatened not to identify the appellant. (T. at 111). When questioned about whether the lives of his family had been threatened, the victim would only say that he was not allowed to answer that question. (T. at 75).
 {¶ 8} At the conclusion of the trial, the jury returned verdicts of guilty on both counts and both firearm specifications.
 {¶ 9} The court imposed a seven-year term of incarceration for felonious assault, concurrent with a four-year term for the aggravated burglary count. (Judgment Entry of Sentence, Sept. 29, 2006). Three-year terms for each of the two gun specifications were run concurrently to each other and consecutively to the sentence for the underlying offenses, thus the appellant was given an aggregate sentence of 10 years. (Id.).
 {¶ 10} Appellant filed a timely notice of appeal and herein raises the following two assignments of error for our consideration: *Page 5 
 {¶ 11} "I. CLEMENTS' CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE.
 {¶ 12} "II. OVER OBJECTION, THE TRIAL COURT ALLOWED INADMISSIBLE HEARSAY THAT SHOULD HAVE BEEN EXCLUDED, CAUSING PREJUDICE TO CLEMENTS."
 I. {¶ 13} In his first assignment of error appellant argues that his convictions for aggravated burglary and felonious assault are based upon insufficient evidence. We disagree.
 {¶ 14} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 15} Sufficiency of the evidence is a question of law for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by State constitutional amendment on other grounds in State v. Smith (1997), 80 Ohio St.3d 89. *Page 6 
 {¶ 16} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine" Search Term Begin whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt Search Term End ."Search Term Begin Jackson v. Virginia (1979), 443 U.S.307, 319, 99 S.Ct.2781, 2789. Search Term End (Emphasis in original); State vThompkins, supra 78 Ohio St.3d at 386.
 {¶ 17} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735.
 {¶ 18} In State v. Thompkins, supra the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary."78 Ohio St.3d 380 at paragraph three of the syllabus.
 {¶ 19} The indictment in the case at bar alleged that the appellant knowingly caused serious physical harm to Steven McIntyre or in the alternative it was alleged that appellant knowingly caused or attempted to cause physical harm to the victim by means of a deadly weapon.
 {¶ 20} R.C. 2903.11(A) provides a definition of felonious assault:
 {¶ 21} "(A) No person shall knowingly do either of the following: *Page 7 
 {¶ 22} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 23} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance * * *"
 {¶ 24} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 25} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 26} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).
 {¶ 27} R.C. 2911.11(A)(1) defines the offense of aggravated burglary as follows: "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply: (1) The offender inflicts, or attempts or threatens to inflict physical harm on another. . ." *Page 8 
 {¶ 28} Each count contained a firearm specification in accordance with R.C. 2941.145.
 {¶ 29} Appellant does not dispute that the victim was shot in the leg with a handgun. The victim underwent surgery and has a permanent scar on his leg. (T. at 67). The victim suffered nerve damage to his leg. (T. at 67). Accordingly, the State presented sufficient evidence that the victim suffered "serious physical harm". R.C. 2901.01(A) (5). Further the State presented sufficient evidence that a "firearm" was used during the commission of the offenses. R.C. 2923.11; R.C. 2941.145.
 {¶ 30} Appellant's main argument is that there was insufficient evidence to identify him as the assailant. Appellant's argument is premised upon the fact that the victim declined to identify appellant as his assailant at trial.
 {¶ 31} However, the record contains the following evidence linking appellant to the commission of the crimes. The victim testified that he owed money to the person who shot him. (T. at 74). He further testified that he was alone in his apartment at the time the assailant arrived. (T. at 74; 78; 116-117). The victim testified that he knows the person who shot him. (T. at 86). He was able to observe his assailant at the time of the shooting. (T. at 86). The victim testified that his assailant hit him in the head with a pistol before shooting him in the leg. (T. at 74; 117). The victim admitted that on the night of the shooting he told Detective Brnjic the street name of the person who had shot him. (T. at 95; 119; 121). The victim further admitted that the person who shot him is pictured in the photo array that the police had shown him. (T. at 103). The victim did not tell the 911 operator who had shot him because the assailant was present at the time the 911 call was placed. (T. at 109-110). The victim indicated that his refusal to identify *Page 9 
appellant in court was the result his being paid not to identify appellant and his fear for the safety of his family. (T. at 111-112).
 {¶ 32} Patrolman Maring and Sergeant Haren testified the victim identified the street name of his assailant. (T. at125-126; 183). Detective Brnjic testified that the victim selected appellant's photograph from a photo array as being the person who had shot him. (T. at 152-154). Detective Brnjic further testified that appellant admitted that he had gone to the victim's apartment to collect a drug debt and that an argument broke out when the victim failed to have the money. (T. at 161). The argument became physical and appellant admitted he struck the victim in the head with his fist. (T. at 161). Appellant denied that he had shot the victim. (T. at 162-163).
 {¶ 33} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of felonious assault and aggravated burglary.
 {¶ 34} We hold, therefore, that the State met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 35} Appellant cross-examined the victim in an attempt to show the victim was unwilling to identify appellant. Appellant further crossed examined the State's witnesses in an attempt to demonstrate that a third-party had actually shot the victim as appellant was wrestling with him. However, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or *Page 10 
sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v.Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citingState v. Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v.Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 36} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 37} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight or sufficiency of the evidence. C.E. Morris Co. v. Foley Constr. (1978),54 Ohio St. 2d 279, 376 N.E. 2d 578. *Page 11 
 {¶ 38} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial.
 {¶ 39} Accordingly, appellant's first assignment of error is overruled.
 II. {¶ 40} In his second assignment of error, appellant contends that the trial court erred in permitting Officer Maring and Sergeant Brnjic to testify at trial that the victim told each officer that "Face" had shot him because the circumstances did not demonstrate the reliability of the prior identification. We disagree.
 {¶ 41} Appellant concedes that the prior identification testimony was admissible pursuant to Evid. R. 801(D) (1) (c), which provides: "A statement is not hearsay if: "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification." [Appellant's Brief at 5].
 {¶ 42} The Staff Note provides as follows:
 {¶ 43} "This rule extends the principle recognized in Ohio inState v. Lancaster (1971), 25 Ohio St. 2d 83. It is identical to Federal Evidence Rule 801(d) (1) (C) except for an added provision for exclusion if the prior identification were made under unreliable circumstances.If a witness has made an identification prior to appearing in court totestify and such identification is the result of the witness havingactually perceived the person identified, evidence of suchidentification is admissible regardless of whether or not the witnesscan now make an identification. 4 Weinstein's Evidence § 801(d) (1) (C) [01] (1977). * * *" (Emphasis added.) *Page 12 
 {¶ 44} Further, the rationale for the rule is indicated in the Staff Note as: "* * * [T]he perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the court room. The added provision requires the trial judge to determine whether the circumstances under which the identification was made demonstrates reliability of the prior identification. This grant of discretion tightens the use of this basis of evidence of identification consistent with constitutional requirements. * * *"
 {¶ 45} The testimony is also admissible pursuant to R.C. 2945.55, which provides: "When identification of the defendant is an issue, a witness who has on previous occasion identified such person may testify to such previous identification. Such identification may be proved byother witnesses." (Emphasis added.) See, also, State v. Breedlove
(1971), 26 Ohio St.2d 178.
 {¶ 46} The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Neil v.Biggers (1972), 409 U.S. 188, 199-200, 93 S.Ct. 375, 382. "* * * `The crucial issue is whether, based on a totality of the circumstances, there is a "very substantial likelihood of misidentification.'" State v. Madison (1980), 64 Ohio St.2d 322,331, citing Neil v. Biggers (1972),409 U.S. 188. * * *"
 {¶ 47} The victim in this case testified that he knows the person who shot him. (T. at 86). The victim testified that he owed money to the person who shot him. (T. at 74). *Page 13 
He was able to observe his assailant at the time of the shooting. (T. at 86). The victim admitted that on the night of the shooting he told Detective Brnjic the street name of the person who had shot him. (T. at 95; 119; 121). The victim further admitted that the person who shot him is pictured in the photo array that the police had shown him. (T. at 103). The victim did not tell the 911 operator who had shot him because the assailant was present at the time the 911 call was placed. (T. at 109-110). Under these circumstances, the prior identification was reliable. The appellant does not allege misconduct by the police or that the identification was unnecessarily suggestive. Therefore, the fact that the victim identified appellant as his assailant at a time when the victim was in pain, bleeding or after waking-up after surgery go to weight and reliability of the testimony rather than admissibility. See,State v. Brown (1988), 38 Ohio St.3d 305, 310-311,528 N.E.2d 523 533, citing Manson v. Brathwaite (1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.
 {¶ 48} In this case, the victim's prior identification did not create a "very substantial likelihood of misidentification" which would amount to reversible error.
 {¶ 49} Appellant's second assignment of error is overruled. *Page 14 
 {¶ 50} Accordingly, the judgment of the Licking County Court of Common Pleas is affirmed.
 By: Gwin, P.J., Farmer, J., and Wise, J., concur *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to appellant. *Page 1