[Cite as *State v. Smith*, 2012-Ohio-2956.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                       |
| :--------------------- | :- | :--------------------------- |
| STATE OF OHIO          | : | Hon. W. Scott Gwin, P.J.      |
|                        | : | Hon. Sheila G. Farmer, J.     |
| Plaintiff-Appellee     | : | Hon. Julie A. Edwards, J.     |
|                        | : |                               |
| -vs-                   | : |                               |
|                        | : | Case No. 2011-CA-0110         |
| STEVE A. SMITH         | : |                               |
|                        | : |                               |
| Defendant-Appellant    | : | O P I N I O N                 |

CHARACTER OF PROCEEDING:        Criminal appeal from the Richland Couonty
                                Court of Common Pleas, Case No. 2011-
                                CR-347D

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         June 27, 2012

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JAMES J. MAYER                  JOHN C. O'DONNELL, III.
JILL COCHRAN                    13 Park Avenue West, Ste. #300
Richland County Prosecutor      Mansfield, OH  44902
38 South Park Street

*Gwin, P.J.*

{¶1} An indictment was filed on July 8, 2011, charging the appellant, Steve Smith ["Smith"], with one count of Aiding and Abetting Illegal Conveyance of Prohibited Items onto the Grounds of Specified Governmental Facility, a felony of the third degree, one count of Bribery, a felony of the third degree, and two counts of Aiding and Abetting Trafficking in Marijuana. One of the counts of trafficking was dismissed prior to trial.

{¶2} At the end of the presentation of the evidence, the jury found Smith guilty of the three remaining charges. Smith was sentenced on October 17, 2011. He was given three years in prison on the charge of Illegal Conveyance. Because Smith was a corrections officer in the prison at the time of the offense, this prison time was mandatory. Smith was further sentenced to twelve months in prison for the trafficking charge. This time was to run concurrently with the time on the Illegal Conveyance charge. On the charge of Bribery, Smith was sentenced to a two-year term of community control to begin upon his release from prison on counts one and three.

Facts and Procedural History

{¶3} In May 2011, an FBI agent was interviewing Manuel Garza, AKA Manny, an inmate at the Richland Correctional Institution (hereinafter RiCI) about a matter unrelated to his current incarceration. At the end of the interview, the agent asked Manuel if he had anything else that he wanted to discuss. Because of this conversation, an undercover operation was devised to arrest a corrections officer who was reportedly bringing contraband into the prison. The identity of the corrupt correction officer was not initially known.

{¶4} Manny was given a telephone number to transfer to the corrections officer. He completed this transaction through another inmate Marvin Crayton. The subject corrections officer was to contact "Doug" at the number provided. The corrections officer was told that "Doug" was Manny's girlfriend's uncle and "Doug" would provide him with a package to deliver into the institution. It was the understanding of the officers involved in the operation the corrections officer would be asking for an ounce of marijuana, an unknown amount of tobacco and a thousand dollars to complete the transaction.

{¶5} The cellular telephone associated with the telephone number given to Manny belonged to the Ohio State Highway Patrol and was obtained from the Findlay headquarters. This cellular telephone was given to Trooper Bryan Butler, an investigator for the Ohio State Highway Patrol, who was briefed on the situation and told how to respond when contacted by the corrections officer in question.

{¶6} In preparation for the operation, Trooper Butler signed out $1000 in cash from the investigation section of the Ohio State Highway Patrol and signed out a little more than an ounce of marijuana from the Ohio State Highway Patrol lab. He took possession of these items on May 20, 2011.

{¶7} On May 26, 2011, Trooper Butler was contacted on the undercover cellular phone via text message from telephone number 419-631-0579. The message read, "Hi, I'm a friend of Manny's. He told me to contact you about a package I was supposed to pick up. Is this the right person?" Trooper Butler responded and indicated that he was indeed the right person. Several messages passed back and forth and a meeting was set up for the following day at 11:00 a.m. Trooper Butler was to meet the corrections officer in the parking lot of the Salvation Army located on Ashland Road in

Mansfield, Ohio. It was determined by matching the telephone number that the text messages came from with the telephone numbers on record in the prison personnel files, that the corrections officer in question was Smith.

{¶8} Around 8:00 a.m. on May 27, 2011, members of the Ohio State Highway Patrol investigative staff, the Ohio State Highway Patrol Special Response Team and officers of METRICH met at the METRICH office to work out how the operation would be carried out. Trooper Butler brought the money and the marijuana. Investigator Bret Perdue from RiCI brought the tobacco used in the operation. A member of METRICH wired Trooper Butler with video and audio recording equipment. METRICH also aided in the surveillance of the transaction.

{¶9} At 10:11 a.m., Trooper Butler sent a text message to Smith to ask him what he was supposed to be bringing to the meeting. Smith texted back "Well I understand I'm picking up tobacco, an ounce, and $600." The understanding of the investigating officers was that "an ounce" referred to an ounce of marijuana, not an ounce of tobacco. The clear bag of tobacco and smaller clear sandwich baggies of marijuana were placed inside of two plastic grocery bags, which were then loosely folded over the interior bags. The marijuana had been taken from a hard-pressed brick of marijuana from a previous drug bust and was harder than the loose tobacco.

{¶10} Trooper Butler drove to the meeting place in an Ohio State Highway Patrol undercover Volkswagen Jetta. Several other undercover vehicles were positioned at different locations nearby. Smith had indicated that he was going to be driving a blue S10 pickup truck and just prior to arriving at the meeting location, Trooper Butler had received a text message from Smith indicating that Smith was already present.

{¶11} Trooper Butler pulled into a parking spot next to Smith who had backed into his spot so that the two vehicles were parked driver's side to driver's side. Trooper Butler got out of his vehicle and approached Smith. Smith then left his vehicle and accompanied Trooper Butler back to his vehicle. Although the video surveillance did not show much, the audio surveillance did pick up the conversation that occurred in the car and the jury was able to listen to the conversation. During this conversation, Smith seemed calm and talkative. He discussed how he was going to smuggle the contraband into the prison and how much money it was going to bring. Although there was no mention by Trooper Butler of marijuana, Smith told Trooper Butler "tobacco is a bigger business than the weed is in there."

{¶12} Trooper Butler gave Smith the grocery bag with the bag of tobacco and marijuana and then counted out six hundred dollars in cash and gave that to Smith. Trooper Butler did not recall if Smith looked inside of the grocery bag and Smith denied ever looking inside. Smith exited the undercover vehicle and approached his own vehicle but was stopped and arrested by the Special Response Team before he made it to his vehicle.

{¶13} Smith gave an audio statement to police, admitted that he had made a deal with an inmate to go pick up a package, and was supposed to bring this package into the prison. He denied knowing that the drugs were in the package and indicated that he was only supposed to bring in tobacco. He admitted that he knew he was supposed to bring in tobacco and that he had done so in the past. Smith admitted that inmate Crayton had asked him to bring in drugs but that he was leery of going down that road. Smith also stated that he told Crayton he was not comfortable with the idea of

bringing in marijuana but that he never gave Crayton a definite answer about whether or not he would bring in the drugs. He admitted the same on the stand. During the interview, Smith vacillated from denying that he had any knowledge about the drugs to admitting that he had a good idea that he would be picking up an ounce of marijuana.

{¶14} Smith admitted "the only reason I even considered weed this time was because we was in so much trouble, cause they're only give you a couple hundred for tobacco and I needed six hundred to get us out of trouble." (State's Trial Exhibit 21). Smith testified at trial and denied that he was ever going to transport the marijuana into prison.

{¶15} Smith testified that he started to bring in tobacco into the prison because he was being blackmailed by inmate McDonald, who said he would tell the Captain that Smith was sneaking cigarettes into prison for his own use. Smith admitted that he brought tobacco into the prison three times for inmate McDonald for a total amount of $700, rather than the twenty to twenty-five times that he admitted to in his statement to police. Smith indicated that the deal was always for an ounce of tobacco and that was what he meant in his text message to Trooper Butler. The delivery person always tried to give Smith more tobacco than an ounce so Smith was not surprised that the bag given to him by Trooper Butler was clearly more than an ounce of tobacco. Smith also testified that he was not surprised that there was marijuana because on two of the three occasions that people had given him tobacco, they had also tried to give him marijuana. Smith testified that he just threw the marijuana away rather than transport it into the prison and that he intended to do the same on this occasion, although he had been clearly paid to deliver the marijuana.

**{¶16}** Tobacco and marijuana are both considered contraband at RiCI.

Assignments of Error

**{¶17}** Smith raises seven assignments of error,

**{¶18}** "I. IT IS AGAINST THE SUFFICIENCY OF THE EVIDENCE THAT DEFENDANT/APPELLANT ATTEMPTED TO CONVEY MARIJUANA INTO A CORRECTIONAL FACILITY.

**{¶19}** "II. IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT DEFENDANT/APPELLANT ATTEMPTED TO CONVEY MARIJUANA INTO A CORRECTIONAL FACILITY.

**{¶20}** "III. IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE THAT DEFENDANT/APPELLANT KNOWINGLY TRAFFICKED IN DRUGS.

**{¶21}** "IV. IT IS AGAINST THE SUFFICIENCY OF THE EVIDENCE THAT DEFENDANT/APPELLANT KNOWINGLY TRAFFICKED IN DRUGS.

**{¶22}** "V. THE COURT COMMITTED PLAIN ERROR IN INSTRUCTING THE JURY THAT A CORRECTIONS OFFICER IS A PUBLIC SERVANT FOR PURPOSES OF A BRIBERY OFFENSE.

**{¶23}** "VI. THE COURT COMMITTED PLAIN ERROR BY INSTRUCTING THE JURY ON ATTEMPT.

**{¶24}** "VII. THE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY INSTRUCTIONS."

Analysis

I, II, III IV

**{¶25}** Smith's first four arguments of error raise issues involving the sufficiency and manifest weight of the evidence presented below. Smith argues he did not intend to transport marijuana into the prison and he could have changed his mind and disposed of the marijuana.

**{¶26}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶27}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in*

*inducing belief.*" (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary (6th Ed. 1990)* at 1594.

**{¶28}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *
>
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶29}** In the case at bar, Smith was convicted of illegal conveyance. R.C. 2921.36 Prohibited conveying of certain items onto property of state facilities states in relevant part,

> (A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility or of an institution, office building, or other place that is under the control of the department of mental health, the department of developmental disabilities, the department of youth services, or the department of rehabilitation and correction any of the following items:
>
> (1) Any deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, or any part of or ammunition for use in such a deadly weapon or dangerous ordnance;
>
> (2) Any drug of abuse, as defined in section 3719.011 of the Revised Code;
>
> (3) Any intoxicating liquor, as defined in section 4301.01 of the Revised Code.

**{¶30}** Smith was also convicted of trafficking in marijuana. R.C. 2925.03(A)(2) states in part that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."

**{¶31}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a

subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No.6221, 1998 WL 214604, (citing *State v. Elliott,* 104 Ohio App.3d 812, 663 N.E.2d 412(1995)).

**{¶32}** R.C. 2923.02(A) provides a definition of attempt: "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶33}** In *State v. Woods*, 48 Ohio St. 2d 127, 357 N.E. 2d 1059(1976), *vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153,* the Supreme Court held at paragraph one of the syllabus that "[a] 'criminal attempt' is when one person purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose. (R.C. 2923. 02[A] construed)."

**{¶34}** In *Woods,* the defendant and another defendant, Reaves, decided to rob the manager of the store as he came out with the store's receipts. The defendants began to "case" the premises. Reaves climbed on the roof with a gun while Woods stayed behind as lookout. Reaves then climbed back down, apparently having heard a nearby fire engine siren, and then Reaves and Woods walked away.

**{¶35}** The Supreme Court found Reaves' actions to be plainly a substantial step in the planned robbery, and strongly corroborative of his and Woods' criminal purpose. The court found no error in the trial court's finding that this conduct constituted attempted robbery. Justice Stern wrote the following:

The committee comment for this section [R.C. 2923.02(A) ] states, in part, that: 'In order to prove an attempt to commit an offense, it must be shown that particular conduct directed toward commission of the offense took place and that such conduct, if successful, would constitute or result in the offense. * * *' This language establishes that the essential elements of a criminal attempt are the *mens rea* or purpose or knowledge, and conduct directed toward the commission of an offense. The statute does not, however, indicate how far this conduct must proceed toward the actual consummation of the crime in order to be considered an attempt to commit that crime. There is also little case law in Ohio on this question, although this court has held that the conduct necessary for a criminal attempt 'need not be the last proximate act prior to the consummation of the felony.' *State v. Farmer* (1951), 156 Ohio St. 214, 216, 102 N.E.2d 11; *Fox v. State* (1878), 34 Ohio St. 377. In *Farmer,* an assault with intent to rob was held, at page 217, 'sufficient to justify the triers of the facts in determining beyond a reasonable doubt that the action of the defendant at the time of * * * [an] altercation was action taken to carry out that intent and therefore amounted to an attempt to perpetrate robbery.' In this case, Reaves committed no assault, and the question arises as to whether his acts nevertheless amounted to an attempt to rob.

American courts have generally agreed that intent to commit a crime does not of itself constitute an attempt, nor does mere preparation. The difficulty is to formulate a standard that excludes preparations prior to an actual

attempt to commit a crime, while including, as punishable, those acts which are so dangerously close to resulting in a crime that intervention and arrest by the police are justified, even before the 'last proximate act.' Various tests have been suggested and followed in other jurisdictions. There is a good discussion of this problem and the various approaches in Wechsler, Jones and Korn, The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy. 61 Columbia L.Rev. 571, 573-621. It is not necessary to consider each of the alternative approaches here. Ohio's statutory definitions of criminal offenses in the Revised Code are based largely upon the American Law Institute's Model Penal Code, and the standard adopted in the latter Code appears to us workable, reasonable, and consistent with the language of R.C. 2923.02(A). Under Section 5.01 of the Model Penal Code, an attempt is when one 'purposely does or omits to do anything which is * * * an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' To constitute a 'substantial step,' the conduct must be 'strongly corroborative of the actor's criminal purpose.' The application of this standard will of course depend upon both the nature of the intended crime and the facts of the particular case. A substantial step in the commission of a robbery may be quite different from that in arson, rape, or some other crime. But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a

crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent.

*Id.* 48 Ohio St. 2d at 131-132, 357 N.E.2d at 1063.

**{¶36}** In *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636, the Supreme Court further defined "substantial step,"

Comment 6(a) to Section 5.01 of the Model Penal Code explains the requirements of "substantial step" and corroboration of the actor's criminal purpose:

'(a) *Requirements of 'Substantial Step' and Corroboration of Purpose.* Whether a particular act is a substantial step is obviously a matter of degree. To this extent, the Code retains the element of imprecision found in most of the other approaches to the preparation-attempt problem. There are, however, several differences to be noted:

*'First, this formulation shifts the emphasis from what remains to be done, the chief concern of the proximity tests, to what the actor has already done.* That further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial. It is expected, in the normal case, that this approach will broaden the scope of attempt liability.

'Second, although it is intended that the requirement of a substantial step will result in the imposition of attempt liability only in those instances in which some firmness of criminal purpose is shown, no finding is required

as to whether the actor would probably have desisted prior to completing the crime. Potentially the probable desistance test could reach very early steps toward crime, depending on how one assesses the probabilities of desistance; but since in practice this test follows closely the proximity approaches, rejection of a test of probable desistance will not narrow the scope of attempt liability.

'Finally, the requirement of proving a substantial step generally will prove less of a hurdle for the prosecution than the res ipsa loquitur approach, which requires that the actor's conduct itself have manifested the criminal purpose. The basic rationale of the requirement that the actor's conduct shall strongly corroborate his purpose to commit a crime is, of course, the same as that underlying the res ipsa loquitur view. But framed in terms of corroboration, the present formulation does not so narrowly circumscribe the scope of attempt liability. Rigorously applied, the res ipsa loquitur doctrine would provide immunity in many instances in which the actor had gone far toward the commission of an offense and had strongly indicated a criminal purpose. * * *" (Emphasis added.) A.L.I. Model Penal Code and Commentaries, Part I (1985), 329-330.

Id. at 191-192, 542 N.E.2d 636.

**{¶37}** In the case at bar, two diametrically opposed scenarios were presented during Smith's jury trial. Smith testified that he never looked inside the bag that he was given by the undercover officer and further testified he never agreed to smuggle marijuana into the prison. Smith argues that there is no evidence that he knew

marijuana was inside the bag and no evidence that he intended to smuggle it into the prison. Smith further argues that he could have abandoned the crime by throwing the drugs away but was prevented from doing so by his immediate arrest.

{¶38} In the case at bar the steps taken by Smith that convincingly demonstrate a firm purpose to commit a crime include the following: Smith admitted that he had taken contraband, i.e. tobacco, into the prison in violation of prison regulations in the past. He admitted that he was aware there might be drugs involved in the transaction. Smith admitted to the investigating officer "the only reason I even considered weed this time was because we was in so much trouble, cause they're only give you a couple hundred for tobacco and I needed six hundred to get us out of trouble." Smith made telephone contact with and arranged to meet the contact. Smith drove to the arranged meeting place and discussed how he would smuggle the contraband into the prison. Smith testified that he was not surprised that marijuana was included with the tobacco.

{¶39} We conclude that there was sufficient competent and credible evidence presented to the jury to convince the jury beyond a reasonable doubt that the state had proven each element of each of the offenses.

{¶40} Whether Smith had arranged to pick up an ounce of tobacco or an ounce of marijuana was for the jury to decide. Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio– 3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable

views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶41}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the

weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶42}** In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶43}** Although Smith cross-examined the witnesses and argued that he had no knowledge that marijuana was inside the bag, and further that there was a lack of evidence that Smith intended to smuggle the marijuana into the prison the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶44}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Smith of the charges.

**{¶45}** Smith's first, second third and fourth assignments of error are overruled in their entirety.

V.

**{¶46}** In his fifth assignment of error, Smith argues that the trial court erred in instructing the jury that a corrections officer is a public servant for purposes of the bribery statute.

**{¶47}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to

counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶48}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an erroneous jury instruction that omits an element of the offense is subject to harmless-error analysis. Id. at 15, 119 S.Ct. at 1837.

**{¶49}** In the case at bar, Smith did not object to instruction that he now contends should not have been given by the trial court. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).

**{¶50}** Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978) paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

**{¶51}** Smith was convicted of Bribery. R.C. 2921.02(B) provides, in part,

No person, either before or after he is elected, appointed, qualified, employed, summoned, or sworn as a public servant or party official, shall knowingly solicit or accept for himself or another person any valuable thing or valuable benefit to corrupt or improperly influence him or another public servant or party official with respect to the discharge of his or the other public servant's or party official's duty.

**{¶52}** R.C. 2921.01(B) defines "public servant" as,

(B) "Public servant" means any of the following:

(1) Any public official;

(2) Any person performing ad hoc a governmental function, including, but not limited to, a juror, member of a temporary commission, master, arbitrator, advisor, or consultant;

(3) A person who is a candidate for public office, whether or not the person is elected or appointed to the office for which the person is a candidate. A person is a candidate for purposes of this division if the person has been nominated according to law for election or appointment to public office, or if the person has filed a petition or petitions as required

by law to have the person's name placed on the ballot in a primary, general, or special election, or if the person campaigns as a write-in candidate in any primary, general, or special election.

"Public servant" does not include an employee, officer, or governor-appointed member of the board of directors of the nonprofit corporation formed under section 187.01 of the Revised Code.

**{¶53}** A "public official" is defined as,

(A) "Public official" means any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement officers. "Public official" does not include an employee, officer, or governor-appointed member of the board of directors of the nonprofit corporation formed under section 187.01 of the Revised Code.

R.C. 2921.01(A).

**{¶54}** In *State v. Lozano,* 90 Ohio St.3d 560, 2001-Ohio-224, 740 N.E.2d 273, the appellant, a city employee accused of theft in office, argued that the definition of "public official" under R.C. 2921.01 was ambiguous. Specifically,

He contends that if the General Assembly had intended the term "public official" to include all public employees, it could have simply defined the term as "any employee of the state or any political subdivision." By providing examples of public employees who are included in the class "public official," *i.e.,* legislators, judges, and law enforcement

officers, defendant maintains, the General Assembly intended the statute to apply only to public employees who share the same characteristics as legislators, judges, and law enforcement.

Id. at 562, 740 N.E.2d 273. The Ohio Supreme Court disagreed and concluded that the term "public official," as defined in R.C. 2921.01(A) is free from ambiguity and clearly includes a city employee.

**{¶55}** In the case at bar, appellant admitted he was a state employee who was employed as a corrections officer at RiCI. (2T. at 310-311). The term "public official," as defined in R.C. 2921.01(A) is free from ambiguity and clearly includes a state employee.

**{¶56}** Accordingly, we find no plain error affecting Smith's substantial rights.

**{¶57}** Smith's fifth assignment of error is overruled.

VI.

**{¶58}** In his sixth assignment of error, Smith contends that the jury instruction defining "attempt" to the jury was erroneous and prejudicial because it included an omission, which is contrary to aiding and abetting which requires an overt act. Further, Smith appears to argue that there should have been an instruction on "abandonment" as a defense to the attempt.

**{¶59}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999), the United State Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence. Accordingly, an erroneous jury

instruction that omits an element of the offense is subject to harmless-error analysis. Id. at 15, 119 S.Ct. at 1837.

**{¶60}** In the case at bar, Smith did not object to the instruction on "attempt" and did not request an instruction on "abandonment." Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).

**{¶61}** The trial court instructed the jury as follows,

The defendant is charged first with aiding or abetting an illegal conveyance of a drug of abuse into a detention a facility. Before you can find him guilty of aiding or abetting an illegal conveyance, you must find beyond a reasonable doubt that, on or about May 27, 2011, here in Richland County, he aided or abetted another in knowingly conveying or attempting to convey a drug of abuse onto the grounds of a detention facility.

To "aid" or "abet" means to support, assist, encourage, cooperate with, advise or incite. If you find beyond a reasonable doubt that Mr. Smith knowingly helped, supported, assisted, encouraged, cooperated with, advised or incited another in the commission of an illegal conveyance, he is to be regarded as if he were the principal offender and is just as guilty as if he personally performed every act constituting the offense. When two or more persons have a common purpose to commit a crime and one does one part and a second performs another, those acting together are equally guilty of the crime. However, the mere association with one who

does an unlawful act does not make a person a participant in the crime so long as his acts are innocent.

To knowingly convey or attempt to convey a drug of abuse is an element of this crime. A person acts knowingly regardless of his purpose when he is aware his conduct will probably cause a certain result. A person, therefore, knowingly conveys or attempts to convey a drug of abuse onto a detention facility when he is aware that his conduct will probably cause a conveyance or attempt to convey a drug of abuse onto a detention facility.

An "attempt to convey" is when one intentionally does or fails to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in the conveyance of a drug of abuse into a detention facility.

2T. at 350-351.

{¶62} R.C. 2923.03 Complicity provides, in relevant part,

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.

(C) No person shall be convicted of complicity under this section unless an offense is actually committed, *but a person may be convicted of complicity in an attempt to commit an offense in violation of section 2923.02 of the Revised Code.*

(Emphasis added).

**{¶63}** The Legislative Service Commission notes to R.C.2923.03 provide,

It is unnecessary that the principal offender be convicted before an accomplice can be convicted. An offense must actually be committed, however, before a person may be convicted as an accomplice. *The single exception to this rule permits conviction as an accomplice in an attempt to commit an offense.*

(Emphasis added). Thus, the jury was properly charged that Smith could be found guilty of complicity in an attempt to convey the drugs into the prison.

**{¶64}** Further, the record establishes that Smith was not being charged with an attempt through an omission to act. On the contrary, the state presented specific evidence of Smith's actions in attempting to convey the marijuana into the prison. There was evidence adduced at trial that Smith aided and abetted inmate Marvin Crayton in illegally conveying drugs into the prison and in trafficking marijuana. It was inmate Crayton that was Smith's contact person. There was no evidence presented at trial that inmate Crayton was working for police or was aware that an undercover operation was

going in progress. Smith made a deal with Crayton to bring in the substances in exchange for $600.00. (2T. at 330). Thus, there was evidence that Smith aided and abetted inmate Crayton both in conveying the drugs into the prison and in trafficking in the drugs.

**{¶65}** Accordingly, we find no plain error affecting Smith's substantial rights.

**{¶66}** Smith's sixth assignment of error is overruled in its entirety.

VII.

**{¶67}** Smith's final argument is that he was denied the effective assistance of counsel because counsel failed to object to the jury instructions regarding "public servant" and "attempt" and because trial counsel failed to make a Rule 29 motion for acquittal at the close of the State's case.

**{¶68}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶69}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{¶70}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland* 466 U.S.

at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{¶71}** Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶72}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. 668 at 689,104 S.Ct. at 2064.

**{¶73}** An appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U. S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the Trier of fact would not have found him guilty.

**{¶74}** The failure to make a Rule 29 motion for acquittal does not prevent an argument regarding the sufficiency of the evidence on appeal. A defendant preserves his right to object to any alleged insufficiency of the evidence when he enters his "not guilty" plea. *State v. Jones* (2001), 91 Ohio St.3d 335, 346, 2001-Ohio-57, 744 N.E.2d 1163. *See also, Eastley v. Volkman,* ___Ohio St.3d ___, 2012-Ohio-2179, 2012 WL 1889147(May 22, 2012) ("When the evidence to be considered is in the court's record, a party need not have moved for directed verdict or filed a motion for a new trial or a motion for judgment notwithstanding the verdict to obtain appellate review of the weight of the evidence").

**{¶75}** None of the instances raised by Smith rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that

Smith cites in support of his claim that he was denied effective assistance of counsel, we find Smith was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

**{¶76}** Because we have found no instances of error in this case, we find Smith has not demonstrated that he was prejudiced by trial counsel's performance.

**{¶77}** Smith's seventh assignment of error is overruled.

Conclusion

**{¶78}** Smith's first, second, third, fourth, fifth, sixth  and seventh assignments of error are overruled in their entirety and the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

By Gwin, P.J.,

Farmer, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

WSG:clw 0611

[Cite as *State v. Smith*, 2012-Ohio-2956.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| STEVE A. SMITH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-0110 |

    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed. Costs to appellant.


_____

HON. W. SCOTT GWIN


_____

HON. SHEILA G. FARMER


_____

HON. JULIE A. EDWARDS