[Cite as *State v. Gatlin*, 2012-Ohio-3226.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00235 |
| VINCENT D. GATLIN, SR, | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2011-
CR-00824

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    July 16, 2012

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant
JOHN FERRERO
BY: RENEE WATSON                   GEORGE URBAN
Stark County Prosecutor             116 Cleveland Avenue N.W.
110 Central Plaza South              Canton, OH  44702
Canton, OH 44702

*Gwin, J.*

{¶1} Appellant Vincent Gatlin ["Gatlin"] appeals from the September 20, 2011 judgment entry of the Stark County Court of Common Pleas convicting him of one count of felonious assault with a repeat violent offender specification, one count of sexual battery and sentencing him to an aggregate prison term of 13 years. Appellee is the State of Ohio.

*FACTS AND PROCEDURAL HISTORY*

{¶2} On July 11, 2011, the Stark County Grand Jury returned an indictment charging Gatlin with one count of felonious assault based on sexual conduct while carrying HIV pursuant to R.C. 2903.11(B)(3) and one count of sexual battery pursuant to R.C. 2907.03(A)(5). On August 25, 2011, a superseding indictment was filed which added a repeat violent offender specification pursuant to R.C. 2941.149, to the charge of felonious assault.

{¶3} With respect to the repeat violent offender (RVO) specification, Gatlin understood that the specification would be tried to the court in a separate bifurcated hearing, and stipulated to authenticity and validity of his prior conviction.(1T. at 7).

{¶4} Also before trial, the court conducted a voir dire of the thirteen-year-old victim, M.J. concerning a prior false rape allegation. M.J. admitted that she had once told her sister a story about being knocked off her bike by a strange man and then raped, but then immediately told her sister she was "just playing." M.J's sister, however, took M.J. seriously and told her parents. When confronted, M.J. told her parents it was not true. At the conclusion of the hearing, the court sustained Gatlin's motion to question M.J. about the prior false allegation during trial.

*The Assault on M.J.*

**{¶5}** Thirteen year-old M.J. and her brother live with their grandparents, Annie and Andrew Johnson. M.J. has lived with her grandparents for as long as she can remember. Her mother is Lashell Patton, who is married to Gatlin. M.J's little sister Davaya lives with M.J's mother and Gatlin. Johnson's grandparents allow M.J. and her brother to visit with their mother and Gatlin.

**{¶6}** One such visit took place the weekend of April 16, 2011. Gatlin and Patton routinely collected scrap metal from vacant houses to sell. Originally, on that evening Gatlin had planned to take M.J. and her brother with him to find scrap, but M.J's brother fell asleep. Around 11:00 p.m. that night, Gatlin told M.J. they needed to talk and that he was going to take her to her father's house.

**{¶7}** The two left the house on foot, but instead of going to M.J's father's house they found a vacant home and walked through it. On the way out of the house, Gatlin stepped in a hole and twisted his ankle. They went back home, where Gatlin got a crutch and put a brace on his ankle. He and M.J. then went out again. This time Gatlin started walking towards M.J's father's house. As they walked, Gatlin started asking M.J. inappropriate questions such as what sexual positions she preferred. He then asked M.J. if it would "be nasty if I did it with you." M.J. agreed that would be "nasty" since Gatlin is her stepfather. During this conversation, Gatlin changed course, no longer headed toward M.J.'s father's home.

**{¶8}** Instead, Gatlin lead M.J. to a vacant home located near the Timken Company. Gatlin gained access to the house, and then asked M.J. if she was ready to take a test. M.J. became nervous, said no and made an excuse to go back home. Gatlin

told her to calm down, then forced her into the living room and pushed her down onto the couch.

{¶9} M.J. was wearing her mother's sweat pants, which were big and baggy on her. Gatlin pulled them off M.J. He then removed her underwear. Gatlin was wearing pajama pants with a hole torn between the legs. It was not necessary for him to remove the pants before holding M.J. down with his body weight and engaging in vaginal intercourse. During the assault, Gatlin called M.J. by her nickname "Sticks," telling her "Sticks, you do this well."

{¶10} When he was finished, Gatlin stood up. M.J. saw "white stuff' come out of his penis. Gatlin advised M.J. "don't tell nobody that nothing happened between us, nothing at all." He then demanded, "swear on your little sister Davaya that you won't tell."

{¶11} The two then left the house and walked back to M.J.'s mother's house. When they arrived home, M.J.'s mother asked M.J. what was wrong. M.J. denied anything was wrong. She did not tell her mother the next day what had occurred in the vacant house. When her grandmother picked her up that evening, she still did not disclose what had happened to her.

{¶12} On April 19, 2011, M.J. told two of her cousins what Gatlin had done to her. They advised M.J. that if she did not tell her grandmother about the incident, they would. When she got home from school that afternoon, M.J. told her grandmother. M.J's grandmother responded by calling the Canton Police Department, and then taking M.J. to Akron Children's Hospital.

*The Investigation*

**{¶13}** At the hospital, nurse practitioner Donna Abbott examined M.J. Abbott works in the CARE Center, a clinic dedicated to the evaluation of children who present with suspicions or allegations of physical or sexual abuse or neglect. In her 19 years at Children's Hospital, she has examined over 6000 children.

**{¶14}** M.J.'s exam was normal. At trial, Abbott explained that physical findings in instances of sexual abuse are rare. Abbott completed a rape kit during M.J.'s exam, which was sent to the Canton-Stark County Crime Lab for analysis.

**{¶15}** Meanwhile, Canton Police Detective Charles Lancaster was assigned to investigate this matter. By the time he became involved, M.J. had already been to the hospital. He learned where the assault took place and went there to further investigate.

**{¶16}** The house was filthy. The couch cushions were without covers and clean. Given the condition of the rest of the house, it appeared that the covers had recently been removed from the cushions. Photographs were taken of the scene and a pair of latex gloves was collected from the floor.

**{¶17}** On April 25, 2011, Lancaster interviewed Gatlin. Gatlin showed up to the interview wearing a leg brace and said he injured himself playing basketball. Gatlin denied having sex with M.J. and told Lancaster, he and M.J. had a very good relationship. Gatlin consented to an oral swab. Lancaster collected the same and sent it to the Canton-Stark County Crime Lab.

**{¶18}** Criminalist and Canton-Stark County Crime Lab employee Kylie Graham performed the testing on M.J.'s rape kit, Gatlin's swab, and the latex gloves found at the scene. The gloves yielded no useful forensic evidence. Graham did identify

spermatozoa on M.J.'s vaginal swab. From the spermatozoa, she developed a DNA profile. She did the same with Gatlin's oral swab, and then compared the two profiles. Graham concluded that Gatlin was the source of the spermatozoa on M.J.'s vaginal swab.

**{¶19}** During Graham's testimony, Gatlin objected to Graham's testimony as an expert pursuant to Crim.R. 16(K). While Gatlin did not object to Graham being declared an expert, he argued that since the state failed to provide her qualifications at least 21 days before trial, her testimony should be precluded. The court took a recess so Gatlin could review Graham's qualifications and overruled the objection.

**{¶20}** Lancaster again interviewed Gatlin about M.J.'s allegation. Gatlin continued to deny the allegation and told Lancaster that M.J. was a "conniving teenager." He further advised Lancaster that he would never have sex with M.J. because he is HIV positive. Gatlin has been under the care of infectious disease physician Marcantonio Fiorentino for management of his HIV since 2003. Upon cross-examination, Lancaster testified that he did not attempt to retrieve the underwear M.J. was wearing the night in question and there was no physical evidence that placed Gatlin in the house where the crime occurred. Additionally, Lancaster testified there was no physical evidence that placed M.J. in the home. Crime Scene Unit officer, Jeffery Weller, testified that he examined the house for bodily fluids and he did not find evidence of any bodily fluids.

*Gatlin's Case*

**{¶21}** At trial, Lashell Patton, Gatlin's wife and mother of M. J. testified that she did not observe anything out of the ordinary when Gatlin and M.J. returned from

scrapping the evening in question. Gatlin took the stand in his own defense. He told the jury he had no idea how his semen got into M.J.'s vagina.

*The Verdict and Sentence*

**{¶22}** After hearing all the evidence and deliberating, the jury found Gatlin guilty as charged. The court then addressed the RVO specification. The state presented a certified copy of Gatlin's 1994 conviction for robbery, a felony of the second degree. Based on Gatlin's stipulation and the state's exhibits, the court found Gatlin guilty of the specification.

**{¶23}** On September 9, 2011, the trial court conducted a sentencing hearing. The court found that pursuant to *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, sexual battery and felonious assault were allied offenses. Gatlin was thus sentenced to eight years for felonious assault and a consecutive five years for the RVO specification. Finally, the court classified Gatlin as a Tier III sex offender.

*ASSIGNMENTS OF ERROR*

**{¶24}** Gatlin raises three assignments of error,

**{¶25}** "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶26}** "II. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING EXPERT WITNESSES TESTIMONY.

**{¶27}** "III. THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT ON THE REPEAT VIOLENT OFFENDER SPECIFICATION."

I.

**{¶28}** Gatlin's first assignment of error raise issues involving the sufficiency and manifest weight of the evidence presented below.

**{¶29}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶30}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but

depends on its *effect in inducing belief*." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting *Black's Law Dictionary (6th Ed. 1990)* at 1594.

**{¶31}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶32}** In the case at bar, Gatlin was convicted of felonious assault based on sexual conduct while carrying HIV, sexual battery and a repeat violent offender specification. In his brief, he contests his sexual battery and felonious assault convictions.

**{¶33}** Gatlin was convicted of sexual battery pursuant to R.C. 2907.03 (A)(5). To prove sexual battery, the state needed to show that Gatlin engaged in sexual conduct with M.J. and that Gatlin was M.J.'s stepfather. Pursuant to R.C. 2907.01(A), sexual conduct includes vaginal intercourse between a male and a female.

**{¶34}** Gatlin was also convicted of felonious assault based on sexual conduct while carrying HIV pursuant to R.C. 2903.11(B)(3). To convict Gatlin, the state needed

to prove that Gatlin knowingly engaged in sexual conduct with 13 year-old M.J. with the knowledge that he was HIV positive. R.C. 2901.22(B) provides that "a person acts knowingly, regardless of his purpose when he is aware that his conduct will probably cause a certain result or will be of a certain nature. A person has knowledge of the circumstances when he is aware that such circumstances probably exist."

{¶35} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff,* 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No.6221, 1998 WL 214604, (citing *State v. Elliott,* 104 Ohio App.3d 812, 663 N.E.2d 412(1995)).

{¶36} Gatlin does not challenge any one element of either sexual battery or felonious assault. Instead, Gatlin takes aim at M.J.'s credibility and the investigation.

{¶37} In the case at bar, M.J. testified that Gatlin penetrated her vagina with his penis. "Corroboration of victim testimony in rape cases is not required." *State v. Johnson,* 112 Ohio St.3d 210, 217, 2006-Ohio-6404 at ¶53, 858 N.E.2d 1144, 1158. Gatlin's semen was found on the vaginal swabs taken from M.J. Gatlin admitted that he was HIV positive and that he was M.J.'s stepfather.

{¶38} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Gatlin had committed the crime of felonious assault while carrying HIV and sexual battery. We hold, therefore, that the state met its burden of production regarding each

element of the crimes and, accordingly, there was sufficient evidence to support Gatlin's convictions.

**{¶39}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶40}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may

accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶41} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence,

freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

**{¶42}** Although Gatlin cross-examined the witnesses and argued that M.J. lacked credibility and had made false allegations in the past the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶43}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury was in the best position to evaluate this competent, credible evidence, and we will not substitute our judgment for that of the trier of fact. The jury neither lost their way nor created a miscarriage of justice in convicting Gatlin of the charges.

**{¶44}** Gatlin's first assignment of error is overruled.

II.

**{¶45}** In the instant case, two witnesses were permitted to testify as experts over the objection of trial counsel. Kylie Graham of the Stark County Crime Lab and Donna Abbott, nurse practitioner at Akron Children's Hospital. Gatlin argues that the trial court

abused its discretion when it permitted the experts' testimony after the state had failed to provide their qualifications twenty-one days before trial.

**{¶46}** Crim.R. 16(K) states the following:

**(K) Expert Witnesses; Reports.** An expert witness for either side shall prepare a written report summarizing the expert witness's testimony, findings, analysis, conclusions, or opinion, and shall include a summary of the expert's qualifications. The written report and summary of qualifications shall be subject to disclosure under this rule no later than twenty-one days prior to trial, which period may be modified by the court for good cause shown, which does not prejudice any other party. Failure to disclose the written report to opposing counsel shall preclude the expert's testimony at trial.

**{¶47}** Crim.R. 16(K) referring to the twenty-one day rule includes the phrase "which period may be modified by the court for good cause shown, which does not prejudice any other party." New subsection (L)(1) is essentially a codification of the case law favoring the trial court's discretion in fashioning remedies to satisfy justice:

**(L) Regulation of discovery.**

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or

prohibit the party from introducing in evidence the material not disclosed,

or it may make such other order as it deems just under the circumstances.

**{¶48}** Like this case, the appellant in *State v. Viera,* 5th Dist. No. 11 CAA020020, 2011-Ohio-5263 was provided with the report produced by the expert, but was not provided with the expert's qualifications. In that case, this court found the trial court maintains discretion to sanction non-disclosure by remedies other than exclusion of the expert's testimony.

**{¶49}** In the case at bar, Gatlin did not allege at trial nor does he contend on appeal that either of the expert's were not qualified to render the opinions which they expressed to the jury. The trial judge gave defense counsel a copy of the expert's qualifications before the start of cross-examination. The court then recessed to afford Gatlin an opportunity to review the qualifications. Gatlin did not indicate that he needed more time or that his defense was hindered by the failure to disclose the experts' qualifications at an earlier time.

**{¶50}** Given the circumstances sub judice, we find the trial court did not err in permitting the two witnesses to testify.

**{¶51}** Gatlin's second assignment of error is overruled.

III.

**{¶52}** In his third assignment of error, Gatlin maintains that the jury was required to make a finding as to whether or not serious physical harm was caused or attempted to be caused to M.J. Gatlin argues that because the jury did not make that finding he could not be sentenced to additional time on the repeat violent offender specification.

**{¶53}** Penalty enhancement is allowed under R.C. 2929.14(D) once the trial court determines an offender is a repeat violent offender. *State v. Davis,* 7th Dist. No. 08 MA 152, 2009-Ohio-5079.

**{¶54}** Pursuant to R.C. 2929.14(B)(2)(a), in addition to the longest prison term authorized for the offense, the sentencing court may impose an additional definite prison term of one, two, three, four, five, six, seven, eight, nine or ten years if all of the following criteria are met:

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929 .12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

**{¶55}** In the case at bar, at the sentencing hearing defense counsel objected stating,

Thank you, Your Honor. Your Honor, as it relates to the repeat violent offender specification, we, of course, agree that the Court is permitted, was permitted, to make the finding that Vincent is a repeat violent offender. That is specified in the statute that the Court makes that finding, and we agree that that is permissible.

However, in order for the Court to impose an additional sentence for that repeat violent offender specification, there is an additional finding that must be made, and that is under 2929.14(D)(2)(a).[*sic.*]

And, Your Honor, because Vincent was convicted of a felony three and a felony two -- and felony two is what permits the Court to find him to be a repeat violent offender. For a felony two, he cannot be sentenced for a repeat violent offender specification unless there is a finding that this is an offense of violence, which we agree felonious assault is. However, the

trier of fact must find that the offense involved an attempt to cause or threat to cause serious physical harm to a person.

Your Honor, under *State v. Foster*, which we're all familiar with, as well as the case I provided to the Court this morning, and the State, and that is *State v. Davis*, 2009-Ohio-5079, the jury must make that finding as to whether or not there is serious physical harm caused or attempted to be caused.

The repeat violent offender specification certainly allows the Court to sentence the Defendant in excess of the maximum penalty. And in order for that to be done, the jury has to make that special finding to justify that.

If this had been a felony one conviction, then there is no need for that special finding, and we would agree that the Court could have sentenced Vincent to additional time for the specification. Because he was convicted of a felony two, and that special finding was not decided by or submitted to the jury, we would ask the Court not to make any special -- or, rather, not to sentence Vincent to any time on the specification.

4T. at 423-424.

**{¶56}** As was true in *State v. Davis,*

The problem here lies in the second factor, subsection (ii), which factor was added by 2006-H-95, effective August 3, 2006, after *Foster*. This mandatory factor provides:

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

*State v. Davis,* supra, 2009-Ohio-5079, ¶32-33. However, in the case at bar, Gatlin was convicted for having sexual relations with his minor stepdaughter knowing that he was HIV-positive. This new manner of committing felonious assault was added in 2000. *State v. Gonzalez*, 154 Ohio App.3d 9, 2003-Ohio-4421, 796 N.E.2d 12, ¶1 (1st Dist.) Gatlin's crime is inherently one of the worst forms of felonious assault because "unlike many other serious injuries, at this point in time, there is no cure for HIV or AIDS. While many victims of felonious assault may fully recover from the injuries of a beating, a stabbing, or a shooting, the victim here most probably will not." Id. at ¶131. "No doubt exists that HIV can ultimately cause the death of a person who becomes infected...." *State v. Couturier,* 10th Dist. No. 99AP-950, 2000 WL 796703 (June 22, 2000).

**{¶57}** In the case at bar, the jury found Gatlin engaged in sexual conduct with his thirteen-year-old step daughter while knowing that he was HIV positive, thereby finding at a minimum he attempted to cause serious physical harm.

**{¶58}** Thus, by its finding of guilty the trier of fact necessarily found that the "offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person." Appellant's third assignment of error is overruled in its entirety.

## CONCLUSION

{¶59} Gatlin's first, second and third assignments of error are overruled in their entirety, and the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By Gwin, J.,

Delaney, P.J., and

Edwards, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. JULIE A. EDWARDS

WSG:clw 0618

[Cite as *State v. Gatlin*, 2012-Ohio-3226.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| VINCENT D. GATLIN, SR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-00235 |

 

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.  Costs to appellant.

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. JULIE A. EDWARDS